IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil No. 3:18-cv-00001-RJC

| | |
|---|---|
| JOSEPHINE M. KING, | ) |
| Plaintiff, | ) |
| v. | ) ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

**THIS MATTER** comes before the Court on the parties' cross Motions for Summary Judgment, (Doc. Nos. 11, 13), and the parties' briefs and exhibits in support. The motions are ripe for adjudication.

I. BACKGROUND

A. Procedural Background

Josephine M. King ("Plaintiff") seeks judicial review of Nancy A. Berryhill's ("Defendant" or "Commissioner") denial of her social security claim. Plaintiff filed an application for Supplemental Security Income under Title XVI of the Social Security Act ("SSA") on January 22, 2014, alleging a disability onset date of April 8, 2012. (Doc. Nos. 10 to 10-1: Administrative Record ("Tr.") at 20). Her applications were denied first on May 2, 2014, (Tr. 174), and upon reconsideration on August 15, 2014. (Tr. 173). Plaintiff filed a timely request for a hearing on August 29, 2014, (Tr. 183),

1

and an administrative hearing was held by an administrative law judge ("ALJ") on October 12, 2016. (Tr. 64).

Following this hearing, the ALJ found that Plaintiff was not disabled under the SSA. (Tr. 17–35). Plaintiff requested a review of the ALJ's decision, but on November 3, 2017, the Appeals Council denied Plaintiff's request for a review. (Tr. 1). After having exhausted her administrative remedies, Plaintiff now seeks judicial review of Defendant's denial of her social security claim in this Court.

B.   Factual Background

The question before the ALJ was whether Plaintiff was disabled under section 1614(a)(3)(A) of the SSA. (Tr. 20). To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the SSA.[1] Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). Plaintiff alleges that her disability began on April 8, 2012 due to a combination of physical and mental impairments. (Tr. 529, 703, 706, 855, 917, 919, 964).

After reviewing Plaintiff's record and conducting a hearing, the ALJ found that Plaintiff did not suffer from a disability as defined in the SSA. (Tr. 29). In reaching his conclusion, the ALJ used the five-step sequential evaluation process established by the Social Security Administration for determining if a person is disabled. The

---

[1] Under the SSA, 42 U.S.C. § 301, et seq., the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

2

Fourth Circuit has described the five-steps as follows:

> [The ALJ] asks whether the claimant: (1) worked during the purported period of disability; (2) has an impairment that is appropriately severe and meets the duration requirement; (3) has an impairment that meets or equals the requirements of a listed impairment and meets the duration requirement; (4) can return to her past relevant work; and (5) if not, can perform any other work in the national economy.

Radford v. Colvin, 734 F.3d 288, 290–91 (4th Cir. 2013) (paraphrasing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant has the burden of production and proof in the first four steps. Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015). However, at the fifth step, the Commissioner must prove that the claimant is able to perform other work in the national economy despite her limitations. See id.; see also 20 C.F.R. § 416.960(c)(2) (explaining that the Commissioner has the burden to prove at the fifth step "that other work exists in significant numbers in the national economy that [the claimant] can do"). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 27–29).

In reaching his decision, the ALJ first concluded at steps one through three that Plaintiff was not employed, that she suffered from severe physical and mental impairments, and that her impairments did not meet or equal any of the impairments listed in the Administration's regulations. (Tr. 22–23). Therefore, the ALJ examined the evidence of Plaintiff's impairments and made a finding as to Plaintiff's Residual Functional Capacity ("RFC"). In pertinent part, the ALJ found that Plaintiff

> has the [RFC] to perform light work . . . except the claimant can frequently climb, balance, stoop, kneel, crouch, crawl, handle and finger. The claimant can occasionally reach overhead with her bilateral upper extremities. The claimant is further limited to simple routine repetitive

tasks for 2-hour intervals throughout the day for the duration of the workday, at a non-production pace.

(Tr. 23). Having established Plaintiff's RFC, the ALJ concluded that Plaintiff could not perform the work in which she had previously been employed. (Tr. 27). Therefore, the ALJ proceeded to the fifth and final step of the process: determining whether, given the limitations embodied in her RFC, Plaintiff could perform any work that existed in significant numbers in the national economy. (Tr. 27–29). To make that determination, the ALJ relied on the testimony of a Vocational Expert ("VE"). The VE testified that Plaintiff could perform the following representative jobs that exist in significant numbers in the national economy: "inspector/hand packager,"[2] "cashier,"[3] and "counter clerk."[4] (Tr. 28). According to the DOT, the inspector/hand-packager and counter clerk jobs require a Reasoning Level of 2, and the cashier job requires a Reasoning Level of 3. The ALJ accepted the VE's testimony and concluded that Plaintiff's impairments did not prevent her from working; consequently, Plaintiff's application for Title XVI benefits was denied. (Tr. 28–29).

## II. STANDARD OF REVIEW

The Court must decide whether substantial evidence supports the final decision of the Commissioner and whether the Commissioner fulfilled his lawful duty

---

[2] DOT 559.687-074, 1991 WL 683797.
[3] DOT 211.462-010, 1991 WL 671840.
[4] DOT 249.366-010, 1991 WL 672323.

4

in his determination that Plaintiff was not disabled under the Social Security Act. See 42 U.S.C. §§ 405(g) and 1382(c).

The SSA, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The district court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). As the SSA provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, the Fourth Circuit noted that "substantial evidence" has been defined as being "more than a scintilla and [do]ing more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . .").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner,

5

assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith v. Schweiker, 795 F.2d at 345; Blalock, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome–so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

Plaintiff alleges that the ALJ made three errors: (1) the ALJ rejected the opinions of Plaintiff's treating physician without giving good reasons for doing so, (2) the ALJ failed to identify and question the VE about apparent conflicts between the VE's testimony and the DOT, and (3) the ALJ failed to explain how he found Plaintiff capable of light level work on a sustained basis when determining Plaintiff's RFC. The Court addresses each allegation of error in turn, but ultimately, finds them all meritless.

### A. The ALJ sufficiently explained why he rejected the opinion of Plaintiff's treating physician.

Plaintiff argues that the ALJ failed to give good reasons for rejecting and giving "little if any weight" to the medical source opinion statement in the record from Plaintiff's treating physician, Dr. Lisa Suddeth.

ALJ's must afford treating sources controlling weight if they "find that a treating source's opinion on the issue(s) of the nature and severity of [the] impairment(s) is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "By negative

6

implication, if a physician's opinion is *not* supported by clinical evidence or if it is *inconsistent* with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996) (emphasis added). A non-exhaustive list guides courts when weighing medical opinions. Courts may ask: "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527).

Here, although the ALJ noted that the opinion of Dr. Suddeth, as Plaintiff's primary care physician, would normally be entitled to controlling weight, it was entitled to "little if any weight" for several reasons. (Tr. 26). Dr. Suddeth diagnosed Plaintiff with bipolar disorder, generalized anxiety disorder, depression, and personality disorder. (Id.). Although Dr. Suddeth noted that Plaintiff's prognoses were good when medicated, she still concluded that Plaintiff was disabled from engaging in gainful employment secondary to her impairments. (Id.). She also opined that Plaintiff would have difficulty working around people. (Id.).

The ALJ gave good reasons for discrediting Dr. Suddeth's opinions. First, he identified the primary reason he did not choose to give her testimony controlling weight was that Dr. Suddeth "indicated that the mental health symptoms are improved with medication which is inconsistent with her opinion that the claimant is disabled." (Tr. 26). "If a symptom can reasonably be controlled by medication or

7

treatment, it is not disabling" under the SSA. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986). Therefore, the ALJ properly noticed this inconsistency in Dr. Suddeth's testimony. Moreover, the ALJ explained that the determination of disability is a legal question that is left to the exclusive province of the Commissioner—not a doctor. See 20 C.F.R. § 416.927(d) (explaining that administrative findings that are dispositive on the issue of disability are reserved to the Commissioner). When a physician, even a treating physician, renders an opinion on such reserved issues, the opinion is not a medical one and is not entitled to any special significance. Id. Additionally, the ALJ explained that the question regarding whether Plaintiff was disabled from engaging in gainful employment was "the only question on the questionnaire in check block form, which does not allow Dr. Suddeth to support her conclusion." (Tr. 27). As this Court has previously determined, "check-box or fill-in-the-blank forms 'are entitled to little weight because they are not supported by objective evidence in the records as required under 20 C.F.R. §§ 404.1527, 416.927.'" Shannon v. Berryhill, No. 1:17-CV-00066, 2018 WL 1567368, at *4 (W.D.N.C. Mar. 30, 2018) (quoting Michaels v. Colvin, No. 3:15-CV-388, 2016 WL 8710975, at *5 (W.D.N.C. Mar. 25, 2016), report and recommendation adopted, No. 3:15-CV-00388, 2016 WL 5478014 (W.D.N.C. Sept. 26, 2016), aff'd sub nom. Michaels v. Berryhill, 697 Fed. Appx. 223 (4th Cir. 2017)). Accordingly, these form reports constitute "weak evidence at best." Id. (quoting Shelton v. Colvin, 2015 WL 1276903, at *3 (W.D. Va. Mar. 20, 2015)). In sum, the

8

ALJ proffered multiple, sound reasons for not apportioning controlling weight to Dr. Sudder's opinion, and thus, he committed no reversible error on this ground.

### B. The ALJ's Step Five finding is supported by substantial evidence.

Next, Plaintiff alleges that the ALJ failed to identify and question the VE about apparent conflicts between the VE's testimony and the DOT. Defendant does not dispute that a possible unresolved conflict existed between Plaintiff's RFC and the inspector/hand packager and cashier positions that the VE identified Plaintiff could perform. (Doc. No. 14 at 8).[5] However, Defendant denies that an apparent conflict existed regarding the third position identified by the VE—counter clerk—and the DOT. And so long as the ALJ found at least one occupation that Plaintiff could perform, a finding of not disabled is proper.

In <u>Pearson v. Colvin</u>, 810 F.3d 204, 209 (4th Cir. 2015), the Fourth Circuit held that the ALJ has not fully developed the record if any unresolved conflicts exist between the VE's testimony and the DOT. <u>Pearson</u> elevated the ALJ's responsibility in addressing apparent conflicts. Now, an ALJ cannot rely unquestioningly on a VE's testimony; instead, an ALJ must ask the VE whether his or her testimony conflicts with the DOT. <u>Id.</u> at 208. And even if the VE answers that no conflicts exist, the ALJ has an affirmative "duty to make an independent identification of apparent conflicts." <u>Id.</u> at 208–10. This means that the ALJ must

---

[5] Because Defendant concedes this point, the Court does not discuss the apparent unresolved conflict between the DOT and the VE's testimony regarding the positions of inspector/hand packager and cashier.

9

identify where the VE's "testimony seems to, but does not necessarily, conflict with the [DOT]." Id. at 209.

Plaintiff alleges that an apparent conflict existed between the VE's testimony that Plaintiff could perform the job of counter clerk and the DOT because she claims there are "serious doubts about the viability of such an occupation in the current national economy." (Doc. No. 12 at 15). ALJs utilize VEs' expertise in their Step Five assessment because VEs have "training and experience in vocational counseling or placement, an up-to-date knowledge of job requirements, occupational characteristics and working conditions, and a familiarity with the personal attributes and skills necessary to function in various jobs." Wilson v. Califano, 617 F.3d 1050, 1053 (4th Cir. 1980). To date, agency regulations recognize the DOT as an authoritative source of reliable job information for determining disability claims and identifying possible jobs that claimants can perform. 20 C.F.R. § 416.966(d)(1). Indeed, it is the first source listed in an illustrative list of various governmental and other publications that the Social Security Administration will take administrative notice of because the Administration considers these sources to have "reliable job information." Id. Accordingly, the ALJ was entitled to rely on the VE's testimony, which identified the photofinishing counter-clerk position[6] as a job Plaintiff could perform and a job that has approximately 117,000 positions nationwide. (Tr. 28). This is a sufficient number to defeat a disability finding and conclude that Plaintiff

---

[6] DOT 249.366-010, 1991 WL 672323.

can perform work in the national economy.[7] Even despite technological advancements, the photofinishing industry still exists. Therefore, the ALJ was entitled to credit the VE's testimony, 20 C.F.R. § 404.1566(e), and the Court "will not disturb that finding based upon [Plaintiff's] conclusory proclamations to the contrary." Bavaro v. Astrue, 413 F. App'x 382, 384 (2d Cir. 2011).

Plaintiff's final Pearson argument is that an apparent conflict existed between Plaintiff's limitation to perform only simple, routine, repetitive tasks and jobs which require a Reasoning Level 2 or higher. The DOT's Reasoning Development scale has six levels: Level 1 requires the least reasoning ability, and Level 6 requires the most reasoning ability. See DOT, App. C, 1991 WL 688702. Reasoning Level 2 requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." Id. And Reasoning Level 3 requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving several concrete variables in or from standardized situations." Id.

---

[7] See Guiton v. Colvin, 546 Fed. Appx. 137, 142 (4th Cir. 2013) (recognizing that in Hicks v. Califano, 600 F.2d 1048 (4th Cir. 1979), the court found 110 jobs in the claimant's state to be a significant number of jobs); Hodges v. Apfel, 203 F.3d 820 (4th Cir. 2000) ("Hodges asserts that he qualifies for no more than 153 jobs. That number suffices to defeat Hodges's claim for disability benefits."); see also, Bavaro v. Astrue, 413 F. App'x 382, 384 (2d Cir. 2011) (finding that the Commissioner need show only one job to meet her burden at Step Five and declining to take judicial notice of the decline of the photofinishing industry).

11

Recently the Fourth Circuit has held that an apparent conflict exists "between a limitation to 'short, simple instructions' and a need to carry out "detailed but uninvolved . . . instructions' jobs (as found in jobs requiring Level 2 Reasoning)." Thomas v. Berryhill, 916 F.3d 307, 313–14 (4th Cir. 2019), as amended (Feb. 22, 2019). However, in this case, Plaintiff has no limitation comparable to the limitation which the Fourth Circuit found problematic in Thomas. Unlike in Thomas, the ALJ did not recognize that Plaintiff had any limitations in her ability to follow or comprehend instructions. Differing from Thomas, the ALJ did not find that Plaintiff had moderate limitations in concentration, persistence, or pace. Therefore, he did not include any limitation in Plaintiff's RFC regarding short and simple instructions because he found that Plaintiff had no such limitations for which to compensate. The Court finds that a meaningful difference exists between a limitation to *perform* only simple, routine, repetitive tasks—Plaintiff's RFC limitation here—and a limitation to only receive and follow short, simple instructions—the RFC limitation in Thomas. The first limitation accounts for a claimant's ability to *perform* certain job tasks while the second limitation accounts for a claimant's ability to *comprehend* job tasks. Thomas is distinguishable from the case at bar.[8] Moreover, this Court has

---

[8] This Court recently rejected Plaintiff's argument, and the Court's decision today is consistent with that decision:

> Plaintiff's RFC does not limit the number of instructions Plaintiff is able to follow, resulting in no apparent conflict for the ALJ to identify. The Court acknowledges that the Fourth Circuit in Thomas v. Berryhill has held an apparent conflict arises between an RFC of "short, simple instructions" and "detailed but uninvolved . . . instructions" in jobs requiring Level 2 reasoning. Thomas v. Berryhill, No. 17-2215 at *9 (4th

12

consistently held that no apparent conflict exists between a limitation to perform simple, routine, repetitive tasks and jobs with Reasoning Level 2 or higher.[9] Therefore, the Court reject Plaintiff's allegation of error and finds that no apparent conflict existed under Pearson.

C. The ALJ provided the proper function-by-function analysis of Plaintiff's limitations.

Finally, Plaintiff alleges that the ALJ did not detail a sufficient "narrative discussion describing how the evidence supports each conclusion," as required to do under SSR 96-8p. 20 C.F.R. § 404.1545(b)–(d). Plaintiff grounds his alleged error in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), which states that an ALJ's RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Mascio, 780 F.3d at 636

---

Cir. 2019). Here, Plaintiff's RFC of "simple, routine, repetitive tasks" does not conflict with the DOT definition of Level 2 reasoning.

Kiser v. Berryhill, No. 3:17-CV-00739, 2019 WL 1173376, at *6 n.2 (W.D.N.C. Mar. 13, 2019).

[9] See, e.g., Walters v. Berryhill, No. 3:17-CV-538, 2018 WL 7200665, at *6 (W.D.N.C. Nov. 5, 2018), report and recommendation adopted, No. 3:17-CV-00538, 2019 WL 427330 (W.D.N.C. Feb. 4, 2019); Wilhelm v. Berryhill, No. 5:17-CV-00138, 2018 WL 4705562, at *5 (W.D.N.C. Sept. 29, 2018) ("Therefore, no apparent conflict exists between jobs having a Reasoning Level of 2 or 3 and a limitation to only performing simple, routine, repetitive tasks."); Gaston v. Berryhill, 1:17-CV-182, 2018 WL 3873593, at *4 (W.D.N.C. Aug. 15, 2018); Corvin v. Berryhill, No. 5:17-CV-92, 2018 WL 3738226, at *4 (W.D.N.C. Aug. 7, 2018) ("Reasoning level 2 jobs 'do not imply an apparent conflict with a work limitation to simple, routine, repetitive work.'" (quoting Bethea v. Berryhill, 5:17-CV-145, 2018 WL 1567356, at *4 (W.D.N.C. Mar. 30, 2018)).

13

(quoting SSR 96-8p). Plaintiff claims that under Mascio, the ALJ's analysis here is lacking in the analysis necessary for a proper court review. The Court disagrees.

There is no per se rule requiring remand for failure to perform an explicit function-by-function analysis; rather, "remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio, 780 F.3d at 636. So long as an ALJ's RFC assessment is supported by substantial evidence in the record, and other inadequacies in the ALJ's decision do not frustrate meaningful review, an ALJ has met his Mascio duty. Mascio, 780 F.3d at 636. Remand for lack of discussion is appropriate only if the ALJ's opinion is "'sorely lacking' in a manner that 'frustrates meaningful review.'" Hubbard v. Berryhill, No. 3:17-CV-677, 2018 WL 3744017, at *6 (W.D.N.C. Aug. 7, 2018) (quoting Ponder v. Berryhill, 2017 WL 1246350, at *4 (W.D.N.C. Mar. 31, 2017)).

Here, the Court concludes that the ALJ's decision is not sorely lacking in a matter that frustrates meaningful review. Specifically, Plaintiff faults the ALJ for determining "[i]n conclusory fashion," that Plaintiff, "at almost 51 years old at the time of the hearing with severe Dupuytren's contracture, left shoulder osteoarthritis with chronic pain, right knee degenerative joint disease, lumbar and cervical degenerative disc disease, bipolar disorder, anxiety disorder, and dependent personality disorder, can work at the light exertional level on a regular and continuing basis. (Doc. No. 12 at 24) (footnotes omitted). However, the Court finds

that the ALJ cited to and explained record evidence that supported his RFC conclusion that Plaintiff could perform light work that includes "simple routine repetitive tasks for 2-hour intervals throughout the day for the duration of the workday, at a non-production pace" and only requires occasional reaching overhead with her bilateral upper extremities. (Tr. 24).

The ALJ noted that, while Plaintiff's limitations diminish Plaintiff's ability to perform physical and mental demands of work activity, they do not preclude Plaintiff from working in an environment consistent with the RFC. The ALJ cited to medical evidence from a consultative examination performed on Plaintiff in April 2014 that found Plaintiff's left leg pain and low back pain is aggravated with *prolonged* sitting, standing, lifting and bending. (Tr. 24). In discussing the same consultative examination, the ALJ noted that "[i]t is significant that these findings were based on a one-time examination and the other evidence of record typically reflected no ambulatory difficulties, strength, sensory or reflex deficits." (Id.). Nevertheless, the ALJ still accounted for Plaintiff's alleged difficulty with prolonged sitting, standing, lifting, and bending by including the two-hour interval limitation in Plaintiff's RFC. Furthermore, the ALJ noted that Dr. Albert Whitaker Jr., the consultative physician, opined that Plaintiff "could stand and walk 6 hours in an 8-hour workday with breaks," "[h]er ability to sit was unlimited," and she is able to "occasionally lift and carry 30 pounds." (Id.). The ALJ explained that, regarding Dr. Whitaker's opinion, there was "no support for the claimant's need for breaks while walking or standing 6 hours in an 8-hour workday because other than

15

diminished grip strength there was no evidence of weakness in the upper or lower extremities." (Tr. 25). The ALJ discussed that treatment notes from Caromont health covering the period from August 2014 through February 2015 documented that Plaintiff showed normal gait and station, no extremity edema, sensory, reflex or strength deficits," and that her anxiety was stable." (Id.). The ALJ also cited emergency room treatment notes from Caromont Regional Medical Center from September 2014 through May 2016 demonstrated that, despite Plaintiff's subjective complaints of pain, "she consistently had normal strength and no sensory or reflex deficits." (Id.). Relatedly, the ALJ also discussed that treatment notes from OrthoCarolina in August 2015 reflected that Plaintiff's "subjective complaints were out of proportion with the minimal objective findings." (Id.). All of this logically leads to the conclusion that Plaintiff has the physical abilities to meet the demands of performing light work with the additional limitations the ALJ included in the RFC.

Regarding Plaintiff's mental health, the ALJ noted that while Plaintiff was diagnosed with anxiety from April 2014 through June 2016, her symptoms "were typically mild or benign." (Tr. 26). He elaborated that in April 2014 Plaintiff reported no symptoms and that she was doing well on the current regimen, and Plaintiff's boyfriend reported that the difference was "amazing." (Id.). In December 2015, Plaintiff reported that she was more stable. (Id.). The ALJ noted that while Plaintiff reported increased panic attacks in January 2016, by June 2016 Plaintiff reported doing well on her medication and that the medication improved her anxiety and

depression. (Id.). Thus, the medical evidence the ALJ cited regarding Plaintiff's medical health lead to his conclusion that "[t]he mental health treatment notes and the testimony of the claimant are supportive that depression and anxiety minimally affect the claimant's ability to perform basic work activity and are thus non-severe." (Id.).

In sum, the Court finds that the ALJ adequately cited evidence from medical sources and opinion testimony, including Plaintiff's own testimony, which supported his conclusion that Plaintiff's physical and mental limitations do not prohibit her from performing light work. And any limitations that Plaintiff does suffer from and that could prohibit her from gainful employment, the ALJ compensated for by adding additional limitations in the RFC assessment: (1) only frequent climbing, balancing, stooping, kneeling, crouching, crawling, handling, and fingering; (2) only occasional reaching overhead with her bilateral extremities; (3) only performing simple routine repetitive tasks; (4) only working for 2-hour intervals throughout the day for the duration of the workday; and (5) only working at a non-production pace. (Tr. 23). The Court determines that the ALJ's RFC assessment adequately accounted for Plaintiff's limitations and that the ALJ provided a narrative which sufficiently constructed a "logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)). Therefore, the ALJ met his Mascio duty in articulating his RFC analysis.

## IV. CONCLUSION

In sum, the Court finds that substantial evidence supports the ALJ's decision, and accordingly, the Court upholds the decision of the Commissioner.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 11), is **DENIED**;

2. Defendant's Motion for Summary Judgment, (Doc. No. 13), is **GRANTED;** and

3. The Clerk of Court is directed to close this case.

Signed: March 22, 2019

Robert J. Conrad, Jr.
United States District Judge